Philip ANRIG et al.,
Plaintiffs-Appellants,

v.

RINGSBY UNITED et al.,
Defendants-Appellees.

No. 77–1202.

United States Court of Appeals,
Ninth Circuit.

Nov. 13, 1978.

As Revised on Denial of Rehearing and
Rehearing En Banc March 13, 1979.

George E. Kargianis, Bruce Wolf (argued), Rutherford, Kargianis & Austin, Seattle, Wash., for plaintiffs-appellants.

Edward L. Mueller (argued), Seattle, Wash., for defendants-appellees.

Before DUNIWAY and CHOY, Circuit Judges, and GRANT *, District Judge.

GRANT, District Judge:

This appeal involves procedural issues arising from an attempt by a group of multi-state plaintiffs to bring suit against corporate and individual defendants of varied residences. The court below dismissed the entire action for lack of venue and plaintiffs now appeal that dismissal.

The underlying dispute concerns numerous lease agreements whereby the individual sets of plaintiffs (usually married couples) agreed to lease trucking equipment, consisting of tractor and trailer units, from the defendants. The terms of the agreements are not relevant to this appeal but plaintiffs allege that the lease agreements required the lessees (plaintiffs describe themselves as investors) to devote the equipment to the exclusive use of the defendants. In other words, the plaintiffs allege that they were irrevocably tied to defendants, precluded from seeking freight traffic of their own, and forced to rely upon defendants for the essential management and administration of the lease agreements which plaintiffs characterize as "investment contracts". Plaintiffs allege that defendants, after securing the initial lease agree-

* Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, sitting by designation.

ments from the investors, began an intentional program of substantially reducing and delaying the number of dispatches to each investor, delaying revenue commissions, and assessing excessive operating expenses. The plaintiffs claim this caused them to default in making their payments and defendants then repossessed the trucking equipment, allegedly resulting in plaintiffs' financial ruin. Plaintiffs claim that if it were not for the wrongful acts of the defendants, the lease plan would have been successful.

The named defendants are two corporations and eleven specifically named individuals who are alleged to be officers and/or directors of one or the other corporations. Ringsby-Pacific, Ltd., is a California corporation with its principal place of business in Colorado. Ringsby Truck Lines, Inc., is a Nebraska corporation, also with its principal place of business in Colorado. Nine of the eleven individual defendants (one deceased) reside in Denver, while two reside in Texas.

The plaintiffs are fourteen married couples and one partnership consisting of two men. Seven sets of plaintiffs reside in Nevada, four sets reside in the State of Washington, two sets reside in California, one set resides in Wyoming, and one set resides in Colorado. Originally, plaintiffs attempted to bring a class action against the defendants but the certification of the class was denied and that effort was abandoned by the plaintiffs.

Plaintiffs' original complaint was filed on 14 April 1976, wherein damages were sought for fraud, misrepresentation, breach of contract, restraint of trade and unfair business practices in violation of the Clayton Act, and sale of unregistered securities in violation of the Securities Act of 1933. Subject matter jurisdiction was based on federal question and diversity. The record shows (R. 16–18) that copies of the summons and the complaint were served upon the U. S. Corporation Company, Seattle, Washington, the registered agent for both corporate defendants. Additionally, service was made upon an assistant secretary at the corporate offices in Colorado. On 9 June 1976, an amended complaint was filed, but service was not accepted by the defendants' Seattle attorney, although a copy was received, but not for purposes of accepting process. The defendants filed motions to (1) dismiss for lack of venue, (2) dismiss the individual defendants for lack of personal jurisdiction, (3) change venue, (4) sever plaintiffs' claims, (5) strike the amended summons and complaint, (6) dismiss plaintiffs' claim pursuant to the Securities Act for failure to state a claim, and (7) dismiss plaintiffs' claim of fraud for failure to state a claim.

After four lengthy memorandums were filed by the parties, the trial court issued a memorandum and order on 11 November 1976 granting defendants' motion to dismiss for lack of venue, following which plaintiffs filed a motion to vacate and/or to reconsider the trial court's order. The trial court entered a one-paragraph order denying plaintiffs' alternate motion. Plaintiffs filed their notice of appeal and the record was timely transferred to the clerk of the court of appeals. Thereafter, on 15 March 1977, plaintiffs filed with the district court a motion for relief from order, pursuant to F.R. Civ.P. 60(b)(1, 6), asking that (1) the dismissal of the individual defendants be without prejudice, and (2) the dismissal of the corporate defendants be set aside. Together with the Rule 60 motion, plaintiffs filed hundreds of pages of material to show that during all times relevant to the jurisdictional aspects of this suit, the corporate defendants were registered foreign corporations in the State of Washington and, therefore, that jurisdiction and venue over the corporate defendants were proper. On 21 April 1977 the trial court denied plaintiffs' Rule 60 motion, stating:

This Court dismissed the instant action for lack of venue after a careful review of plaintiffs' first amended complaint. That complaint was vague and imprecise, providing minimal support for federal court jurisdiction. However, viewing the allegations in the amended complaint as a whole, federal question jurisdiction could

be considered based on plaintiffs' antitrust claim. Other asserted bases of jurisdiction were either incorrectly asserted (diversity) or insufficiently alleged (federal securities law). Venue was analyzed from this jurisdictional perspective and found to be lacking.

Plaintiffs herein gave this Court insufficient information regarding defendants' contacts within this district. Not until the motion at hand did plaintiffs explicitly assert that the corporate defendants herein were licensed to do business within this State (RCW 23A.32.010, RCW 23A.40–140). Neither did plaintiffs timely suggest to this Court, at any time, that severance of the individual defendants herein constituted an acceptable alternative within the framework of F.R.Civ.P. 16.

For these reasons, the motion is DENIED.

Because of the fact that the original record from the district court had been transferred to the clerk of the court of appeals on 17 January 1977, all filings in the district court after that date (the Rule 60 motion and attachments) were not a part of the original record on appeal. For this reason the plaintiffs moved this court for leave to supplement the record on appeal. Defendants filed a memorandum in response to plaintiffs motion to supplement the record following which the Honorable Ozell M. Trask, Circuit Judge, ordered that the proposed supplemental record be lodged with this court so that we may now consider the supplement to the extent we deem it appropriate. In the light of 28 U.S.C. § 1653 which reads, "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts", we will now consider the supplemental record.

The trial court's 11 November 1976 order and memorandum, dismissing the suit for lack of venue, reads in part:

The amended complaint is silent as to whether the defendants, or any of them, had any contact or connection with the State of Washington or do business within the State of Washington. It is silent as to where the individual lease agreements were negotiated with each defendant, where they were executed and where they were to be performed. It is silent as to where (or even whether) an offer or sale of a security took place. All that can be gleaned from the amended complaint insofar as State of Washington connection with the matter is concerned is that four plaintiffs are residents of this state.

Defendants have filed seven motions relating to jurisdiction and venue. As the Court is of the opinion that venue in this district is improper, the Court will not discuss the motions in detail. It is important to note, however, that diversity is lacking in that one of the plaintiffs is a resident of Colorado (as are most of the defendants). It is also important to note that purported service of process on all of the defendants was accomplished by service on the assistant secretary of one of the defendants. The required personal jurisdiction over the other defendants is therefore questionable.

As noted above, plaintiffs' amended complaint is somewhat obscure, and it is the considered opinion of this Court that if venue were to lie in this case, it would be pursuant to the special venue provisions of the Clayton Act, which place venue where the defendants reside, are found, or have an agent. None of the defendants reside in the State of Washington, nor does it appear that any of the defendants have an agent in the State of Washington. The record before this Court does not indicate that any of the defendants may be found in the State of Washington, although one might surmise that either by affidavit or through discovery one or more of the corporate defendants might be found within this district. The problem is that none of the individual defendants would meet this test.

Plaintiffs' response to this problem is apparently the co-conspirator theory suggested in *Giusti v. Pyrotechnic Ind., Inc.*, 156 F.2d 351 (9th Cir. 1946). This approach, however, has been largely discredited in favor of the interpretation

that Congress established detailed venue provisions as to each defendant in civil antitrust cases. Even if *Giusti* were the law, the record here does not indicate that *any* of the alleged co-conspirators are subject to the jurisdiction of this Court.

Plaintiffs argue that the Court should not rule at this time on the venue question inasmuch as discovery has not taken place; but surely where the jurisdictional and venue defects are so apparent in the pleadings and have been pointed out in defendants' motions, plaintiffs could, were it possible, supply opposing affidavits. There being none, the Court sees no basis for requiring the parties to proceed further in this jurisdiction.

Accordingly, the motion to dismiss for lack of venue is GRANTED.

The trial court's memorandum is quoted at length because this court finds that the trial court acted under a misapprehension, as revealed by certain statements (regarding the residence of the defendants for venue purposes) contained in its memorandum.

In deciding its 11 November 1976 order, the trial court relied on the allegations contained in plaintiffs amended complaint. To understand the amended complaint, this court must delve into conjecture. It has been suggested in the affidavit of Edward L. Mueller (attached to defendants' "Memorandum in Response to Appellants' Motion for Leave to Supplement the Record of Appeal", filed 6 June 1977) that "plaintiffs' counsel made every conceivable argument in opposition to the motions related to venue in attempts to avoid dismissal of the individual defendants and maintain a monolithic appearing claim allegedly shared by 15 plaintiffs against 14 defendants". The affidavit further suggests the reason for this tactic was somehow an effort to avoid defenses and counterclaim similar to the kind which caused counsel for plaintiffs to abandon the earlier lawsuit (a class action in which the trial court denied certification of the class). Appellees have not explained

how defenses and the counterclaim of any prior suit have relevance to the amended complaint. This court can surmise, however, that plaintiffs argued in the manner in which they did in order to keep all the defendants in one forum. That object in itself is not something to criticize; however, in trying to keep a grip on all the marbles, plaintiffs almost lost them all. In their amended complaint, plaintiffs failed to allege that the corporate defendants had been served with process via their registered agent in Seattle, Washington, a fact already established in the record by the U. S. Marshal's returns (R. 16–18), but never alleged by plaintiffs.

■ The trial court has taken the harsh viewpoint that once the plaintiffs have failed to properly allege jurisdiction and venue, plaintiffs are subject to dismissal regardless of attempts to correct any mistakes. We disagree.

■ From a reading of the trial court's memorandum of 11 November 1976, it is clear that the trial court was examining venue in light of 28 U.S.C. § 1391(b) and (c). Those provisions read:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

These provisions literally require that in a suit based on both diversity and federal question jurisdiction, as in the case at bar, the only district of proper venue is the district where all the defendants reside or the district in which the claim arose.[1] The issue that directly confronts this court is whether Section 1391(b) should be interpreted to mean that when the word "de-

1. See Wright, *Law of Federal Courts,* § 42, p. 171 (3d ed. 1976), where Wright makes valid criticism of Section 1391(b), but we decline to further comment on the logic of this provision.

fendants" is used, it should be read is meaning "indispensable defendants". We believe such an interpretation is required. In other words, if a non-resident, non-indispensable party is listed as a defendant, this will not automatically require dismissal of the entire action for lack of venue but, rather, the non-indispensable party should be dismissed out in order to preserve proper venue for the remaining indispensable defendants. (Or, as suggested in the predecessor statute to Section 1391(b), Section 111 of 28 U.S.C., 1940 ed., a district court may proceed as to parties before it, although one or more defendants [non-indispensable] do not reside in the district, and its judgment shall be without prejudice to such absent defendants. When Section 1391 was drafted, this provision was omitted as covered by Rule 19(b) of the Federal Rules of Civil Procedure.)

■ The error of the trial court was in not determining whether the individual defendants were indispensable parties, so that dismissal of the entire action was required. Plaintiffs contend on appeal that the individual defendants are clearly dispensable to the claims against the corporate defendants, in that the claims against the individuals rest solely upon their attachment to the corporate defendants by way of their positions as directors and as general officers of the defendant corporations. The trial court stated: "The record before this court does not indicate that any of the defendants may be found in the State of Washington, although one might surmise that either by affidavit or through discovery one or more of the defendants may be found within this district. The problem is that none of the individual defendants would meet this test."[2] This statement is followed by a rejection of the co-conspiracy theory of venue, which plaintiffs have argued as a means of finding proper venue over the individual defendants. The error in the court's rea-

soning is that Section 1391 cannot be read literally, but must be read to apply only to indispensable defendants. In *Goldberg v. Wharf Constructers,* 209 F.Supp. 499 (N.D. Ala.1962), the court was faced with a similar problem of improper venue and a motion to dismiss as to all the defendants. The court stated:

> It is well settled, however, that the defense of improper venue is personal to the party to whom it applies and that a resident defendant may not avail himself of a dismissal or transfer as to a nonresident unless the latter is an indispensable party. In such cases involving multiple dispensable defendants of diverse residences the accepted and more just procedure is to sever, as permitted by Fed.R. Civ.P. 21, and dismiss or transfer only the claims against those parties as to whom venue is improper. And in some of these cases . . . such severance was ordered on the defendants' motion to dismiss for improper venue, without requiring particularized motions directed thereto. (Footnotes omitted.)

209 F.Supp. 499, 503, 504.[3]

This court approves the procedure of *Goldberg* and finds that, in the unique circumstances of this case, it was error for the district court to fail to follow such a route.

The district court concluded its memorandum by stating that there were obvious jurisdictional and venue defects, that plaintiffs had failed to supply opposing affidavits, and that therefore the court granted the motion to dismiss. The jurisdictional defects mentioned by the trial court deal with both subject matter and personal jurisdiction. With respect to personal jurisdiction, the trial court stated, "It is also important to note that purported service of process on *all* of the defendants was accomplished by service in Colorado on the assistant secretary of one of the defendants.

---

**2.** R. 209, lines 23–29.

**3.** The *Goldberg* court cited the following cases: *Camp v. Gress,* 250 U.S. 308, 316, 39 S.Ct. 478,

63 L.Ed. 997 (1919); *Industrial Waxes, Inc. v. International Rys. of Cent. America,* 193 F.Supp. 783, 788 (S.D.N.Y.1961), among others.

The required personal jurisdiction over the other defendants is therefore questionable."[4] (Emphasis added.) This statement was made in spite of the fact that the record showed that service of process was made on the corporate defendants via their registered agent in Seattle, Washington. Regarding the individual defendants, this court agrees that because of the limited service of process, personal jurisdiction over some of the individual defendants may be lacking.

■ With respect to subject matter jurisdiction, the trial court stated: "It is important to note, however, that diversity is lacking in that one of the plaintiffs is a resident of Colorado (as are most of the defendants)."[5] From the above statements, it is clear that the court based its dismissal on a belief that not only was proper venue impossible but, in addition, that there were defects in personal and diversity jurisdiction. All of these problems could and should have been resolved first by determining whether the individual defendants and the Colorado plaintiffs were indispensable parties under the guidelines of Rule 19(b) and second by severing and either transferring or dismissing those non-indispensable parties pursuant to Rule 21. In its order of 21 April 1977 denying plaintiffs Rule 60 motion, the trial court stated, "Not until the motion at hand did plaintiffs explicitly assert that the corporate defendants were licensed to do business within this state . . . .. Neither did plaintiffs timely suggest to this court, at any time, that severance of the individual defendants constituted an acceptable alternative . . . .."[6] We hold that in light of the unique circumstances of this case, the interests of justice require the trial court to consider the possibility of transfer or dismissal of improper parties under F.R.Civ.P. 21 and 28 U.S.C. § 1406(a). See *Sabolsky v. Budzanosky*, 457 F.2d 1245 (3rd Cir. 1972);

*Jett v. Phillips & Associates*, 439 F.2d 987 (10th Cir. 1971); Moore's Federal Practice ¶ 0.146[5] 2d ed. 1977.

■ At this juncture we wish to make it clear that our holding in this case does not require district judges, in every case, to keep diversity jurisdiction alive despite pleadings that are clearly inconsistent with diversity. In the case at bar, there is a complex web of jurisdiction and venue issues and complete dismissal may very well mean that certain plaintiffs might be precluded by the statute of limitations. In cases where diversity is pleaded but contradicted by joinder of a nondiverse party, the trial judge should require the plaintiff to make motions and argument before trial as to whether it wishes the dispensable nondiverse parties to be severed. The court should be duty-bound to inform the litigants that it is considering radical summary disposition of the case unless it receives from plaintiff a formal motion to sever. In future, perhaps murkier cases, the paramount considerations are the interests of justice, which weigh against complete dismissal in the instant case.

■ The question next presented, once we find Rule 21 should be utilized, is whether the individual defendants are non-indispensable parties. The specific issue may be stated: Whether, in a suit against a corporation and based upon corporate agreements, the corporate officers and directors are indispensable parties. As in all situations concerning status as an indispensable party, the four factors proposed by Rule 19(b) must be examined: (1) the extent a judgment rendered in a person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the per-

---

**4.** R. 209, lines 11–15.

**5.** R. 209, lines 8–11.

**6.** R. 692, pp. 3–8.

son's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. *In Levin v. Mississippi River Corporation,* 289 F.Supp. 353 (S.D.N.Y.1968), a trial court was faced with the issue of whether a majority of a corporation's directors were indispensable parties in a suit against a corporation to require payment of dividends. The *Levin* court found that the most relevant factors proposed by Rule 19(b) are whether a judgment rendered in the person's absence will be adequate and whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. We agree and find those factors most weighty in the circumstances of the case at bar. The *Levin* court used those factors to hold that the majority of a corporation's directors were not indispensable parties to the suit against the corporation. Although the objective of the suit in *Levin* (issuance of dividends) is not identical to that in the case at bar (*inter alia* breach of contract), the desirability of joining the directors in a dividend suit seems to be more compelling than in a suit on corporate lease agreements. In *Levin,* the court stated that "A growing and persuasive body of authority, which this Court adopts, dispenses with the need to join as defendants directors who are not amenable to service in the plaintiff's chosen forum". 289 F.Supp. 353, 361.[7] *Koster v. (American) Lumbermens Mutual Cas. Co.,* 153 F.2d 888, 889 (2d Cir. 1946); *Hertz, et al. v. Record Pub. Co. of Erie, et al.,* 102 F.Supp. 689, 690 (W.D.Pa.1952); *Hulburt Oil & Grease Co. v. Hulburt Oil & Grease Co.,* 371 F.2d 251, 256 (7th Cir. 1966). In the case at bar, we find that a judgment rendered in the absence of the individual defendants will be adequate and that if the action is dismissed in its entirety for improper venue (or lack of jurisdiction), the plaintiffs will not have an adequate remedy available, due in part to the passage of time and the running of the statute of limitations. Therefore, we find that the individual defendants are dispensable parties and that the causes of action against them should be dismissed without prejudice, so that the actions against the corporate defendants may proceed.[8]

■ In the trial court's memorandum of 11 November 1976, the court suggested that federal question jurisdiction and venue may lie against the corporate defendants under the Clayton Act. On remand, the district court should re-examine both asserted federal statutes, 15 U.S.C. §§ 15 and 22, to determine whether federal question jurisdiction would lie against the corporate defendants. With respect to the co-conspiracy theory of venue urged by plaintiffs to find proper venue over the individual defendants under the rule of *Giusti v. Pyrotechnic Industries,* 156 F.2d 351 (9th Cir.), cert. denied, *Triumph Explosives v. Giusti,* 329 U.S. 787, 67 S.Ct. 355, 91 L.Ed. 675 (1946), we find that theory is not applicable in this case, in that the plaintiffs have not alleged overt acts in furtherance of the conspiracy constituting actual transacting of business within the Western District of Washington by any of the individual defendants. To this extent, the trial court is affirmed. *See, Occidental Petroleum Corp. v. Buttes Gas & Oil Co.,* 331 F.Supp. 92, 96–98 (C.D.Calif.1971).

---

7. The *Levin* court cites the following cases: See *Doherty v. Mutual Warehouse Company,* 245 F.2d 609, 612 (5th Cir. 1957); *Kroese v. General Steel Castings Corporation,* 179 F.2d 760, 761–764, 15 A.L.R.2d 1117 (3rd Cir.), cert. denied 339 U.S. 983, 70 S.Ct. 1026, 94 L.Ed. 1386 (1950); *Altman v. Central of Georgia Railway Company,* 254 F.Supp. 167, 169–170 (D.D.C.1965), *reversed on other grounds,* 124 U.S.App.D.C. 155, 363 F.2d 284 (D.C.Cir.), *cert. denied* 385 U.S. 920, 87 S.Ct. 231, 17 L.Ed.2d 144 (1966); *Whittemore v. Continental Mills,* 98 F.Supp. 387, 390–394 (D.Me.1951); *Gordon v. Elliman,* 306 N.Y. 456, 463–465, 119 N.E.2d 331 (1954); *Swinton v. W. J. Bush & Co.,* 199 Misc. 321, 102 N.Y.S.2d 994, 997–998 (S.Ct.N.Y.), affirmed, 278 App.Div. 754, 103 N.Y.S.2d 1019 (1st Dept. 1951).

8. Plaintiffs-Appellants have stated that they were content to proceed against the corporate defendants alone.

With respect to the co-conspiracy theory of venue under the Securities Act of 1933, we direct the district court to re-examine this issue, 15 U.S.C. § 77v, but we make no comment on the merits of plaintiffs' claim under the Securities Act of 1933.

In summary, if the district court concludes that no federal question and pendent jurisdiction exist, we suggest that the district court dismiss without prejudice the claims of the non-diverse plaintiffs, so that diversity jurisdiction may be maintained against the corporate defendants.

We hold that dismissal of the entire action for improper venue is a penalty too severe and that, in light of the particular circumstances of the case at bar, such dismissal is improper without a prior investigation of the possibility of dismissing or transferring parties under either F.R.Civ.P. 21 or 28 U.S.C. § 1406(a). With respect to the district court's holding regarding the *Giusti* theory, we affirm, but as to all other issues discussed in the district court's 11 November 1976 memorandum, we vacate and remand for further proceedings consistent with this opinion.

